**UNITED STATES of America, Plaintiff,**

v.

**HOLLYWOOD MARINE, INC., and Water Quality Insurance Syndicate, in personam, and T/B B–524, in rem, Defendants.**

Civ. A. No. H–78–173.

United States District Court,
S. D. Texas,
Houston Division.

April 15, 1980.

J. A. "Tony" Canales, U. S. Atty., Jack Shepherd, Asst. U. S. Atty., Houston, Tex., Rosemary Denson, Dept. of Justice, Washington, D. C., for plaintiff.

Kenneth G. Engerrand, Byron Sims, Houston, Tex., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CIRE, District Judge.

The above-entitled matter having been tried to the Court on the 9th day of April 1980; and the Court having heard the evidence and reviewed the pleadings, exhibits, deposition, and stipulations filed herein, enters the following findings and conclusions.

### FINDINGS OF FACT

1. This civil action arose within the Southern District of Texas.

2. Hollywood Marine, Inc., is and was at all material times, a corporation doing business in the Southern District of Texas.

3. On August 5, 1976, and at all times material hereto, the T/B B–524 was a United States documented, steel hulled tank barge, and Hollywood Marine, Inc., was its bareboat, chartered owner.

4. Water Quality Insurance Syndicate, was at all pertinent times the insurer of Hollywood Marine, Inc., as owner-operator

of the B–524, for liability for oil clean up costs.

5. On August 5, 1976, and at all times material hereto, Three Jack Towing, Inc., was the owner and operator of the Tug THREE JACK, and was engaged in the business of general towage in the coastal and inland waters of Texas, including the Gulf Intracoastal Waterway.

6. On August 5, 1976, and at all times material hereto, Hollywood Marine, Inc., was engaged in the business of transporting petroleum cargo by barge in the coastal and inland waters of Texas, including the Gulf Intracoastal Waterway, through the use of tugboats exclusively owned, controlled, and operated by third parties.

7. On August 5, 1976, and at all times material hereto, the B–524 was a tank barge of 1,692 gross and net tons, having an overall length of 290 ft., breadth of 52.5 ft., hull depth of 12 ft., and double bottom hull plating.

8. On January 13, 1976, Hollywood Marine, Inc., entered into a Boat Charter Agreement with Three Jack Towing, Inc., pursuant to which Three Jack Towing, Inc., was to provide the Tug THREE JACK to perform towing services for Hollywood Marine, Inc.'s barges. Under the terms of the agreement, Three Jack Towing, Inc., warranted that the vessel to be furnished (THREE JACK) would be in all respects properly manned, equipped and supplied. The agreement further provided that Three Jack Towing, Inc., would act solely as an independent contractor and would have exclusive control in every particular of the method and manner of performing towing operations. Three Jack Towing, Inc., also agreed to indemnify Hollywood Marine, Inc., against all claims of third parties for damage caused by the towage operations and further agreed to comply with all navigation laws and regulations with respect to tug and tow and indemnify Hollywood Marine, Inc., from claims arising out of the violation of any laws or regulations, either State or Federal.

9. On or about August 5, 1976, the Barge B–524, as part of the tow of the Tugboat THREE JACK, operating under the terms and provisions of the Boat Charter Agreement dated January 13, 1976, was proceeding eastbound on the Intracoastal Waterway area of Mile 255 when oil was observed spilling into the navigable waters of the United States. The B–524 discharged in excess of 2,000 gallons of oil into the waterway, creating a sheen on the waters.

10. At the time of the oil spillage, Hollywood Marine, Inc., had no control over the method or manner of navigation of the THREE JACK or the B–524, had no personnel onboard the tug or the barge during towage, and in no way directed or supervised the master or crew onboard the tug.

11. The B–524 had been in the exclusive control and in tow of the Tug THREE JACK since prior to July 1976.

12. The B–524 was seaworthy and fit for the carriage of petroleum products when it came into the exclusive control and possession of Three Jack Towing, Inc.

13. The B–524 sustained damage, causing the oil spill of August 5, 1976, while operating under the exclusive control of the Tug THREE JACK pursuant to the terms of the Boat Charter Agreement of January 13, 1976, between Three Jack Towing, Inc., and Hollywood Marine, Inc.

14. The United States Coast Guard caused the oil to be cleaned up at a total cost of $61,816.85, which amount has been paid by the United States.

## CONCLUSIONS OF LAW

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345 and 33 U.S.C. § 1321(n). The Government's cause of action to recover the cost of removal of oil from the navigable waters of the United States is governed by the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.*, as it existed prior to the Amendments of December 27, 1977.

Under the Act, a vessel discharging oil in violation of § 1321(b)(3) and her owners are liable without fault for the Government's

clean up costs. One statutory defense to such liability is "where the discharge was caused solely by . . . an act or omission of a third party without regard to whether any such an act or omission was or was not negligent." 33 U.S.C. § 1321(f)(1)(D).

In *Burgess v. M/V Tamano*, 564 F.2d 964 (1st Cir. 1976), *cert. denied*, 435 U.S. 941, 98 S.Ct. 1520, 55 L.Ed.2d 537 (1978), a compulsory pilot was held not to be a third party within this exception as to the owners of a supertanker because the pilot was at all times subject to the offending ship's control. In *United States of America v. LeBoeuf Brothers Towing Co.*, 1978 A.M.C. 2195 (E.D.La.1978), the owners of an unmanned and non self-propelled barge that discharged oil while operating under a towage agreement with the owners of a tug, were held to be within the third party exception. The defendant/barge owner in *LeBoeuf* never controlled the routine operations of the tug and its crew, other than to dictate itinerary, and the Louisiana District Court held that the negligence of the tug's crew could not be ascribed to the Defendant merely because he owned the barge. The Court expressed the view that "the purpose of the third party defense is to relieve the owner of a vessel of liability for acts done by parties who are not controlled by the offending vessel." 1978 A.M.C. at 2199.

■ The Boat Charter Agreement between Three Jack Towing, Inc., and Hollywood Marine, Inc., is known as a "time charter" or a "fully found charter," under which Three Jack Towing, Inc., was given complete and exclusive control over the manner of performing the towage of Hollywood Marine's barges. Where a tug is in sole charge of the navigation and as an independent contractor has undertaken to tow another vessel, the tow in not liable for the tug's fault. *Walker v. Tug Diane*, 350 F.Supp. 1388 (D.C. Virgin Islands 1972). The owner of the tow is liable for the seaworthiness of the tow while the tug owner is responsible for its safe navigation. *Hart v. Blakemore*, 410 F.2d 218 (5th Cir. 1969).

■ Having found that the B–524 was delivered to the exclusive possession and control of Three Jack Towing, Inc., in a seaworthy condition, the Court concludes that Hollywood Marine, Inc., cannot be held responsible for the oil spillage which is the subject of this cause of action. In reaching this conclusion, the court holds that the oil spill of August 5, 1976, was caused by the act of a third party and that, therefore, Hollywood Marine, Inc., is protected by the third party defense to the Federal Water Pollution Control Act. 33 U.S.C. § 1321(f)(1)(D). The circumstances surrounding the oil spill and the relation of the parties in the instant case are identical to those found in *United States of America v. LeBoeuf Brothers Towing Co.*, 1978 A.M.C. 2195 (E.D.La.1978). Hollywood Marine, Inc., having turned over its unmanned and non self-propelled barge to the Tug THREE JACK for towing and operation, is not responsible for clean up costs incurred as a result of the actions of third parties, over whom Hollywood Marine, Inc., had no control.

Accordingly, the United States is not entitled to recovery of its clean up costs from the Defendants and a take nothing judgment shall be entered herewith.